Paul J. Frederick v. Commissioner. Catherine S. Nickels v. Commissioner.
Frederick v. Commissioner
Docket Nos. 55483, 57588.
United States Tax Court
T.C. Memo 1957-225; 1957 Tax Ct. Memo LEXIS 25; 16 T.C.M. (CCH) 1022; T.C.M. (RIA) 57225; December 9, 1957
*25 Richard H. Sproull, Esq., Monger Building, Elkhart, Ind., for the petitioner in Docket No. 55483. Thomas V. Happer, Esq., for the petitioner in Docket No. 57588. Bernard J. Boyle, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined deficiencies in income tax against Paul J. Frederick and Catherine S. Nickels, Docket Nos. 55483 and 57588, in the respective amounts of $12,587.69 and $9,323.36 for the years 1945 and 1948, and against Paul J. Frederick, Docket No. 55483, in the respective amounts of $6,618.50 and $30,428.69 for the years 1946 and 1947. In answers to the petitions filed herein the Commissioner also claimed additions to tax for fraud. This issue has been abandoned by the Commissioner. He also concedes that the statute of limitations bars the assessment and collection of the deficiency against Catherine S. Nickels for the year 1945. An issue with respect to additional dependency credits is deemed abandoned by the petitioners since no evidence was introduced with reference to it. The issues for decision are: (1) did the Commissioner err in determining that petitioners understated their *26 taxable income for the years in question; (2) whether the signature of Katherine Frederick (now Catherine Nickels) on the joint return for 1948 was procured by duress; and (3) whether the deficiency for 1948 against Catherine is barred by the statute of limitations. A concession made by the Commissioner with reference to the deficiency for 1945 as to Paul can be adjusted under a Rule 50 computation. The petitioners filed separate petitions herein and each is represented by different counsel. Findings of Fact Some of the facts are stipulated, are so found, and the stipulation together with the pertinent exhibits are included herein by reference. The petitioners were husband and wife during the taxable years. They resided in Elkhart, Indiana. Paul filed an individual income tax returns for the years 1946 and 1947 and joint returns with his wife for 1945 and 1948, with the collector of internal revenue at Indianapolis, Indiana. At the time of the trial of this case the petitioners were divorced and Catherine was remarried. Paul's principal source of income during the years in question was from a sole proprietorship construction business. In connection with the investigation *27 of the income tax returns of the petitioners by internal revenue agents certain bank statements, cancelled checks, check stubs, profit and loss statements, "payout" records, receivables and sales invoices relating to the petitioners' affairs were turned over to the agents in 1950 and 1951. This miscellaneous material was returned to Paul's office in May and September 1954. The Commissioner determined the deficiencies set forth in our preliminary statement and in the statement accompanying the notices of deficiency explained as follows: "In the absence of adequate records, your taxable net income has been computed by reference to your bank deposits and withdrawals with proper adjustment for nontaxable receipts and for personal and other nondeductible amounts paid." Catherine signed timely consents or waivers extending the statute of limitations on the assessment of income tax for 1948 to June 30, 1955. The statutory notice of deficiency was mailed to her on February 9, 1955. Catherine's signature on the return for 1948 was procured by duress. Opinion On the question of the deficiencies the burden is on the petitioners to prove error in the Commissioner's determination. The *28 petitioners, inferentially at least, recognize this, but instead of meeting the issue, seek to excuse themselves. As stated on brief by counsel for petitioner Paul J. Frederick: "The prime issue as petitioner sees it and upon which he necessarily rests his case may be stated thusly; Were petitioner's rights under the due process clause of the U.S. Constitution denied to him by the action of Internal Revenue Service agents in this case wherein they took all or most of his business books and records from him and failed to return them to him so as to give him an opportunity to prepare his case and meet the burden of proof imposed upon him by statute? "It is petitioner's position that his constitutional rights were so denied him and that he was unable to prove the correctness of his returns without said books and records and that therefore it is unjust and unreasonable to impose upon him the burden of proof in this case and even incorrect to consider respondent's allegations of deficiencies." This argument must fail for several reasons. In the first place, the constitutional question thus posed was not raised in the pleadings and accordingly is not before the Court. Estate of Louis Solowey, 15 T.C. 188, *29 affd. per curiam (C.A. 2) 189 Fed. (2d) 968, certiorari denied 342 U.S. 850. In the second place, we have found as a fact that the records which had been turned over to the revenue agents in 1950 and 1951 were returned in 1954 to the petitioner's office. Accordingly, there is no factual basis for the petitioners' argument. Further, there is no showing other than by speculation that, had the petitioner had full possession of the records in controversy, the Commissioner's determinations could have been proved to be in error. In the circumstances, no one can tell what a complete and accurate set of records would have shown, but this does not prove the Commissioner to be wrong. Hague Estate v. Commissioner, 132 Fed. (2d) 775 (C.A. 2) affirming 45 B.T.A. 104. Petitioners introduced no evidence to show the Commissioner was wrong and we hold that they have not carried their burden of proof with respect to the deficiencies. Because of the Commissioner's concession with respect to 1945, the remaining issues raised by Catherine are restricted to the year 1948. She contends that her signature to the return filed for that year was *30 procured by duress. Her testimony was to the effect that she and her husband were married in 1930 and divorced in 1950; that they had marital difficulties; that six or more times during their married life Paul had knocked her down; that she had caused Paul's arrest on three occasions for assualt; that at the time she signed the 1948 return her husband handed it to her in blank and when she protested signing it in that state because she was unacquainted with his business affairs he put his hands around her throat and "told me if I knowed when I was well off, I would sign." Because of fear of bodily injury she then signed the return. The return as filed did not report any income of Catherine's and the record does not show that she had any income of her own. Paul testified at the trial of this case, but no questions were asked him as to the circumstances under which Catherine signed the return. Her testimony in this respect is uncontradicted. On the facts, we hold that Catherine signed the 1948 return under duress. The return is not a joint return and Catherine is not liable for any deficiency for 1948. Accordingly, we need not discuss the statute of limitations question with reference *31 to 1948. Decision will be entered under Rule 50 in Docket No. 55483. Decision will be entered for the petitioner in Docket No. 57588.